# COURT OF APPEALS OF VIRGINIA

---

### Record No. 0827-25-2

---

TAMMY LENORE RIPP

v.

COMMONWEALTH OF VIRGINIA

---

Present: Chief Judge Decker, Judges Beales and Athey

Argued at Richmond, Virginia

Opinion Issued August 4, 2026[*]

---

### FROM THE CIRCUIT COURT OF HANOVER COUNTY
Victoria A. B. Willis, Judge

Richard A. H. Quitiquit (Jurach, Tacey & Quitiquit, PLC, on brief), for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,[1] Attorney General; Susan Hallie Hovey-Murray, Assistant Attorney General, on brief), for appellee.

---

### MEMORANDUM OPINION BY
### <u>JUDGE CLIFFORD L. ATHEY, JR.</u>

Following a bench trial, the Circuit Court of Hanover County ("trial court") convicted Tammy Lenore Ripp ("Ripp") of financially exploiting a vulnerable adult, in violation of Code § 18.2-178.1, and unlawfully possessing a certificate of title issued to another, in violation of Code § 46.2-618. On appeal, Ripp contends that her felony conviction for financially exploiting a vulnerable adult must be reversed because there was no evidence in the record establishing that the thing of value she converted—the title to a motor vehicle—had a value of $1,000 or more. Since we agree, we must first reverse the felony conviction before remanding the case back to the trial

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

court for a new trial, if the Commonwealth so elects, on a misdemeanor charge of financially exploiting a vulnerable adult.

## I. BACKGROUND[2]

In 2023, Ripp was dating Charles Wesley Boney, III ("Chuck"), who was in his late seventies. On October 2, 2023, Chuck, who was recovering from a stroke, transferred the title to his 2015 Nissan Altima to Ripp. She was subsequently indicted for: 1) obtaining "a 2015 Nissan Altima belonging to [Chuck]" under false pretenses, in violation of Code § 18.2-178; and 2) financially exploiting Chuck, a vulnerable adult, by converting to her possession "a 2015 Nissan Altima . . . belonging to [Chuck]," in violation of Code § 18.2-178.1. In addition to the felony charges, she also received a misdemeanor charge for unlawfully possessing a certificate of title issued to another, in violation of Code § 46.2-618, which was certified to the trial court pursuant to Code § 19.2-190.1.

On October 4, 2024, a bench trial was held on the aforementioned felony and misdemeanor charges. At the conclusion of the Commonwealth's case-in-chief, the trial court granted Ripp's motion to strike the felony charge of obtaining the vehicle by false pretenses based upon the Commonwealth failing to prove that Ripp ever took possession of the vehicle.[3] The Commonwealth then moved to amend its other felony indictment alleging financial exploitation of a vulnerable adult. The proposed amendment identified the item allegedly converted as "*the title to* a 2015 Nissan Altima, *a thing of value*." (Emphases added.) The trial court granted the proposed amendment and continued the trial on the remaining charges to January 27, 2025. On that date, the

---

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[3] At that juncture, the trial court denied Ripp's motion to strike the charge of financially exploiting a vulnerable adult.

parties acquiesced to a de novo bench trial, which was held on the amended felony indictment for financially exploiting a vulnerable adult and on the misdemeanor charge of unlawfully possessing a certificate of title issued to another.

At trial, Karen Robertson ("Robertson"), Chuck's daughter, explained that her father experienced a debilitating stroke in September of 2023 and, as a result, he began residing at Autumn Care, a residential rehabilitation facility located in Hanover. She further testified that following the stroke, "[h]e was very disoriented." She emphasized that there was a "night-and-day difference" between his pre-stroke and post-stroke demeanor. She also identified, from a photograph entered in evidence, a 2015 Nissan Altima owned by her father that remained parked at his former residence in Quinton, Virginia. Robertson also acknowledged that Ripp "had been dating" her father for approximately four to five years, however Robertson felt that Ripp did not "ha[ve] very good intentions with [her] father."

Stephanie Williams ("Williams"), an occupational therapist at Autumn Care, subsequently testified that on October 2, 2023, she went to Chuck's room at Autumn Care "for an occupational therapy evaluation." Williams testified that, upon entering his room, she encountered Ripp and sensed "tension in the room." She also recalled that Chuck was "laying in the bed and his side table or hospital table was over him, and there was a piece of paper on the table and [Ripp] was talking about the signature of the paper on the table." She further recalled that Ripp was telling Chuck that his signature was "off," or incorrect. Williams next explained that the document appeared to be "a DMV form" and that Ripp asked her if the signature looked okay and whether she "would be a witness to the signing" of the form. Williams testified that she declined to serve as a witness and "tried to redirect" the conversation. However, she testified that she did observe that "the signature was not on the line. It was off to the side and it was jumbled, not really legible."

Hanover County Sheriff's Deputy Matthew O'Bryant ("Deputy O'Bryant") testified that he was dispatched to Autumn Care on October 2, 2023, where he interviewed Chuck. He testified that Chuck told him that "he thought he signed something in regards to his lunch tray or meal tray."

The parties then stipulated that the value of the Nissan Altima was "over a thousand dollars." DMV records reflecting that Ripp became the registered owner of the Nissan Altima, after having purchased the Nissan Altima for $1.00, were also admitted in evidence without objection. The DMV records included a copy of the certificate of title that Chuck signed over to Ripp on October 2, 2023.

At the conclusion of the Commonwealth's case-in-chief, Ripp moved to strike the Commonwealth's case based upon the Commonwealth's failure to prove that the "title itself ha[d] a value of over [$1,000]." In support, Ripp asserted that the value of the title was not equivalent to the value of the vehicle because a title is "just a document to show ownership." Although Ripp conceded that the title had "some value," she argued that its value could only support a misdemeanor conviction. The trial court denied the motion to strike.

Ripp then testified in her own defense. She explained that she had been in a relationship with Chuck for over five years and that, prior to his stroke, they had discussed her "taking ownership of the car." She admitted that on October 2, 2023, she took the title to the Nissan Altima to Autumn Care and that Chuck signed the title to the vehicle over to her. She also explained that she then took the executed title to a DMV office but realized that Chuck had "forgot to put the mileage of the car" on the document, so she called him on the phone and asked him to tell the DMV clerk the mileage. On cross-examination, Ripp testified that after Chuck's stroke, his son had taken "the keys to the car." She also admitted that she had four previous felony convictions.

Jo Lindsay ("Lindsay"), Ripp's mother, confirmed that Chuck told the DMV clerk the mileage on the vehicle over speakerphone. After being recalled, Ripp testified that she never took possession of the Nissan Altima. However, she explained that she had been "keeping up with the taxes on the car for two years and the insurance plan."

In rebuttal, the Commonwealth recalled Deputy O'Bryant, who explained that Chuck told him that "under no circumstance did he intend to sell his car, truck or house to [Ripp]."

At the conclusion of all the evidence, Ripp renewed her motion to strike, arguing in support that if someone burned another person's certificate of title and it was necessary "to determine the value [of the title] for destruction of property," the value of the burned title "wouldn't be the value of the vehicle." Ripp again conceded that the title had some value; however, she contended that the Commonwealth had failed to put on sufficient evidence to establish that the value of the title was $1,000 or more as required for a felony violation of Code § 18.2-178.1.

The trial court denied the renewed motion to strike. In denying the motion, the trial court took judicial notice that people "get loans," "sell," and "gamble with their titles," and further opined:

> A title has value and you stipulated that the title had a value of a thousand dollars or more. I'm not sure where I could go with that except to say that there is value in that and that this line that you want to draw between the title and the car I don't think is one that I can recognize in the law.

The trial court then found Ripp guilty on both counts before sentencing her to 5 years' incarceration, with 4 years suspended, on the felony charge of financially exploiting a vulnerable adult and 12 months' incarceration, all suspended, on the misdemeanor charge of unlawfully possessing a certificate of title issued to another. Ripp appealed.

- 5 -

A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Northcraft v. Commonwealth*, 78 Va. App. 563, 591 (2023) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). To the extent that a sufficiency-of-the-evidence challenge requires us to address questions of law, we review those questions de novo. *See Butler v. Stegmaier*, 77 Va. App. 115, 124 (2023).

B. *The evidence was insufficient to prove that "the title to" the Nissan Altima had a value of $1,000 or more.*

The amended indictment alleged that Ripp had converted "the title to" Chuck's 2015 Nissan Altima. Ripp contends on appeal that the Commonwealth failed to introduce sufficient evidence establishing that the value of "the title to" the 2015 Nissan Altima exceeded $1,000. We agree.

Under Code § 18.2-178.1, it is considered larceny for "any person who knows or should know that another person is a vulnerable adult to, through the use of that other person's impairment, take, obtain, or convert money or other thing of value belonging to that other person with the intent to permanently deprive him thereof." Thus, a violation of Code § 18.2-178.1—where the "thing of value" converted has a value of $1,000 or more—is punishable as grand

larceny. *See* Code § 18.2-95.[4]  Here, the amended indictment alleged that the "thing of value" converted was "the title to"[5] Chuck's 2015 Nissan Altima.

"The owner of an automobile is the party who has legal title to it." *Hall, Inc. v. Empire Fire & Marine Ins. Co.*, 248 Va. 307, 309 (1994).[6]  In Virginia, a certificate of title is "evidence of ownership." *Bolden v. Commonwealth*, 28 Va. App. 488, 493 (1998); *accord King v. Commonwealth*, 303 Va. 341, 351 n.5 (2024).  "In order to effect a transfer of the ownership of a motor vehicle, two things are required: (1) the owner must actually deliver the endorsed certificate of title to the transferee, and (2) the owner must deliver possession of the vehicle to the transferee." *Allstate Ins. Co. v. Atlanta Cas. Co.*, 260 Va. 148, 155 (2000); *see also* Code § 46.2-628 (stating that, to transfer or assign a title, an owner must endorse the certificate and "deliver the certificate to the purchaser or transferee at the time of delivering the motor vehicle").

Hence, a certificate of title is an important document; however, it is not a substitute for a motor vehicle.  Instead, it is merely "evidence of ownership" of a motor vehicle.  *Bolden*, 28

---

[4] On brief, both parties aver that the Commonwealth was required to prove that the value of the title *exceeded* $1,000.  This is incorrect; the value must be "*$1,000* or more."  Code § 18.2-95 (emphasis added); *see Dunn v. Commonwealth*, 222 Va. 704, 705 (1981) (per curiam) ("In a grand larceny prosecution, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the value of the goods stolen *equals at least the amount fixed by statute* in definition of the offense." (emphasis added)).

[5] It can be inferred from the record that "the title to" the vehicle refers to the physical certificate of title issued by Department of Motor Vehicles, not an ownership interest in the vehicle.  *See King v. Commonwealth*, 303 Va. 341, 350-51 (2024) (explaining the difference between the "legal concept of title" and "the *certificate* of title that DMV issues when an owner of a motor vehicle registers that vehicle with DMV").  To keep the two concepts separate, we use "title" and "certificate of title" to refer to a DMV-issued certificate of title and "legal title" when referring to an ownership interest in a vehicle.

[6] The Commonwealth contends that Ripp became the legal owner of the Nissan Altima. But it is well-settled that "a thief takes no title in the property he steals and can transfer none." *Northcraft*, 78 Va. App. at 600.  Hence, the Commonwealth cannot simultaneously argue that Ripp criminally converted the title *and* obtained "legal ownership" of the vehicle.  Ripp, as the thief of the title, could not obtain legal title to the vehicle: she merely obtained the certificate of title to the vehicle.  *See id.*

Va. App. at 493. The unlawful conversion of a certificate of title alone does not result in "the wrongful or fraudulent taking of another's [vehicle] without his permission and with the intent to deprive the owner of that [vehicle] permanently." *Northcraft*, 78 Va. App. at 599 (quoting *Tarpley v. Commonwealth*, 261 Va. 251, 256 (2001)) (defining larceny). So generally, where an indictment for a species of larceny alleges only that "the title to" a vehicle was unlawfully converted, the Commonwealth must prove that the value of the *title* itself meets or exceeds the statutory threshold for grand larceny in order to obtain a felony conviction. *See* Code §§ 18.2-95, -96.

The value of an item may be established by proof of its fair market value, *see Robinson v. Commonwealth*, 258 Va. 3, 5 (1999), or its "actual value," *Grimes v. Commonwealth*, 62 Va. App. 470, 477 (2013) (quoting *Baylor v. Commonwealth*, 55 Va. App. 82, 88 (2009)). Importantly, "[i]t is the 'current value' of the stolen items that must be established." *Id.* (quoting *Dunn v. Commonwealth*, 222 Va. 704, 705 (1981) (per curiam)). Hence, the Commonwealth was required to prove that the fair market value or actual value of the certificate of title, at the time Ripp converted it, was worth at least $1,000. *Id.*; Code § 18.2-95.

Here, the trial court relied on the following evidence when denying Ripp's renewed motion to strike: 1) the 2015 Nissan Altima was worth more than $1,000,[7] and 2) people "get loans," "sell," and "gamble with their titles."[8] However, the record here is bereft of any evidence establishing that "the title to" the 2015 Nissan Altima had a value of $1,000 or more.

---

[7] While the trial court opined that the parties "stipulated that the title had a value of a thousand dollars or more," the record reflects that the parties stipulated that the value of the *vehicle* was $1,000 or more.

[8] The record discloses that the trial court took judicial notice that a person may use a title as collateral for a loan, use a title as a stake, or sell a title. *See Thomas v. Commonwealth*, 36 Va. App. 326, 332 (2001) ("The fact of judicial notice must appear from the record." (quoting *Sutherland v. Commonwealth*, 6 Va. App. 378, 383 (1988))). Because Ripp neither objected nor assigned error to the trial court judicially noticing these facts, we will accept them as true.

Although a title has *some* value, it strains reason to infer that the market or actual value of a mere title is *always* equal to the value of the vehicle reflected on the title. A vehicle is sought for its intrinsic value; a title is sought to ensure the proper transfer of an ownership interest in a vehicle and as evidence of said ownership interest. A destroyed or stolen vehicle may be irretrievable, whereas a destroyed or stolen certificate of title to a vehicle may be replaced. *See* Code § 46.2-632 (providing a process for obtaining a new certificate of title "[w]henever the applicant for the registration of a motor vehicle . . . is unable to present a certificate of title because the certificate has been lost or unlawfully detained by one in possession of it or whenever the certificate of title is otherwise not available"). Correspondingly, it also cannot be successfully argued that the replacement cost of a motor vehicle is equal to the replacement cost of a certificate of title. *See Grimes*, 62 Va. App. at 477 (noting that evidence of "replacement value can, in certain circumstances, afford the fact finder a basis from which to draw inferences about the market value of the stolen item"). The trial court was presented with no evidence that this specific certificate of title was equal to the value of the vehicle reflected on the title.

And although the trial court took judicial notice that a person may secure a loan using a title, wager a title, or sell a title, no evidence establishing what value a lender, bettor, or purchaser would have assigned to this specific certificate of title was introduced. *See DiMaio v. Commonwealth*, 46 Va. App. 755, 764 (2005) (delineating the methods of proving "the value of an asset," to include "lay opinion of the property's fair market value," the opinion of an expert, and "traditional accounting principles"). In fact, there is no evidence of what *anyone* would have paid for the title or its actual value.

When the Commonwealth chose to amend the original indictment, the Commonwealth became tasked with the burden of proving that the value of "the title to" the vehicle was $1,000 or more. But the evidence adduced by the Commonwealth simply established that the value of

the vehicle was greater than $1,000 and that the certificate of title had *some* value—not that the title alone had a value of $1,000 or more. *See Walls v. Commonwealth*, 248 Va. 480, 481-483 (1994) ("Proof that an article has some value is sufficient to warrant a conviction of petit larceny, but where the value of the thing stolen determines the grade of the offense, the value must be alleged and the Commonwealth must prove the value to be the statutory amount." (quoting *Wright v. Commonwealth*, 196 Va. 132, 139 (1954))). Hence, the trial court was left to speculate as to whether the value of the title met the statutory threshold for a grand larceny conviction. Thus, because the value of the title was "an essential element of the crime" that the Commonwealth had to "prove . . . beyond a reasonable doubt," *id.* at 481, Ripp's felony conviction for financially exploiting a vulnerable adult must be reversed, *see Jennings v. Commonwealth*, 67 Va. App. 620, 628 (2017) (holding that a "conviction was plainly wrong" where "a reasonable factfinder could not have concluded beyond a reasonable doubt that [appellant] was guilty of th[e] crime without resorting to sheer speculation outside the evidence presented by the Commonwealth").

Nevertheless, Ripp is not entitled to dismissal of the financial exploitation of a vulnerable adult charge with prejudice. As here, where the only deficiency in the Commonwealth's case is the failure to prove that the value of the item converted met or exceeded the threshold value for a felony conviction, we must remand the case for either a new trial at the election of the Commonwealth on the lesser-included misdemeanor offense or, with the consent of both parties, resentencing on said lesser-included offense. *See Britt v. Commonwealth*, 276 Va. 569, 576 (2008); *cf. Frango v. Commonwealth*, 66 Va. App. 34, 43-46 (2016) (reversing felony conviction for "statutory larceny" of timber under Code § 55-334.1 where the evidence failed to show that the value of the trees exceeded the statutory amount but remanding for a new trial because the evidence was sufficient to "support[] a conviction for the lesser-included offense of petit

- 10 -

larceny"). Since the record reflects that the title had *some* value, Ripp does not contend that the evidence was insufficient in any other respect, and the parties have not consented to remanding for resentencing on the misdemeanor offense, we remand for a new trial on misdemeanor financial exploitation of a vulnerable adult, if the Commonwealth be so inclined.[9] *See Frango*, 66 Va. App. at 44, 46 & n.7.

### III. Conclusion

The evidence was insufficient to prove that the value of the title to the 2015 Nissan Altima was $1,000 or more. Thus, we reverse Ripp's felony conviction for financially exploiting a vulnerable adult. However, we remand for a new trial on misdemeanor financial exploitation of a vulnerable adult, if the Commonwealth so elects.

*Reversed and remanded.*

---

[9] Ripp did not note an appeal of her misdemeanor conviction for unlawfully possessing a certificate of title issued to another, so this Court did not acquire jurisdiction over that conviction. *See Aponte v. Commonwealth*, 68 Va. App. 146, 150 n.1 (2017). Hence, even if there were a reason to do so, we could not consider remanding for resentencing on that conviction. *See id.*